IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In re | Chapter 7 |
|---|---|
| P. DOUGLAS COMBS, | Case No. 05-6498-PHX-SSC |
| | (Jointly Administered with |
| Debtor. | Case No. 02-18352-PHX-SSC) |
| P. DOUGLAS COMBS, | Adversary No. 08-143-SSC |
| Debtor and Plaintiff, | |
| v. | **MEMORANDUM DECISION GRANTING MOTION TO DISMISS AS TO COUNTS 1, 2, 4, AND 5, AND DENYING THE MOTION AS TO COUNT 3** |
| JILL FORD, Trustee, THOMAS ALLEN, esq., attorney for trustee FORD, KEVIN MCCOY esq., attorney for trustee FORD, ALEN, SALA, & BAYNE PLC, firm in the employ of trustee Ford. | |
| Defendants. | |

I. INTRODUCTION

This matter comes before the Court pursuant to a "Motion to Dismiss Pursuant to Federal Rules of Bankruptcy Section 7012(b)(6)" (the "Motion to Dismiss") filed with the Court by Jill Ford, the Chapter 7 trustee, on June 10, 2008. The Court set a hearing on the Motion to Dismiss for August 6, 2008.

After conducting the hearing in the matter on August 6, 2008, and taking into consideration the arguments of each of the parties, the documents filed, and the entire record before the Court, this Decision shall constitute the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, Bankruptcy Rule 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§ 1334 and 157 (West 2008).

## II. FACTUAL BACKGROUND

This Adversary Proceeding was commenced on February 28, 2008, when Paul Douglas Combs, the Plaintiff herein, filed a five-count Complaint against the Trustee, which was subsequently amended by the Plaintiff on March 3, 2008.[1] Counts 1 and 2 of the Complaint allege that the Plaintiff was injured at an airplane condominium hangar ("Hangar") under the "custodial control" of the Trustee which caused the Plaintiff to incur medical costs and lost wages. The Plaintiff claims that since the Trustee had "custodial control" of the Hangar, she had an obligation to insure it, and is responsible for Plaintiff's injuries. Count 3 alleges that the Trustee defrauded the Court by not disclosing her alleged arrangement with a bidder to bid up the price of the estate's interest in the Hangar. As a result of this relationship, the Plaintiff alleges in Count 4 that the Hangar was sold well above its fair market value, which cost was subsequently passed on to the Plaintiff who leased it from the new owner. The final count of the Complaint, Count 5, alleges that the Trustee owes the Plaintiff $150,000, as a result of the Trustee's failure to pay the Plaintiff his homestead exemption upon the separate sale of the Plaintiff's residence.

On April 18, 2005, the Plaintiff filed his Chapter 11 Voluntary Petition

---

1. *See* Docket Entry No. 5.

with the Court.[2] The Schedules and Statements were subsequently filed on May 3, 2005.[3] The Plaintiff later requested that the case be converted to a Chapter 7, which request was granted by the Court.[4] The Schedules and Statements were amended in accordance with the conversion.[5] Among the information provided in the Schedules was the fact that the Plaintiff owned a residence and an interest in the Hangar, and was retired and earning disability income due to a medical disability.

### A. Allegations Concerning Personal Injury Claims

On July 27, 2005, the Trustee was appointed to oversee the Plaintiff's bankruptcy estate. The Plaintiff indicates that he believed there was a "custodial transfer" of the Hangar to the Trustee at the time of the latter party's appointment. At the time of the Trustee's appointment, the Plaintiff alleges that he met with the Trustee's appraiser and told the appraiser that the Hangar "contained a second story floor which had no rails and open apertures more than 7 [feet] above the concrete floor." The Plaintiff also alleges, in the Complaint, that there was a 4' x 8' section of the second story flooring missing.

Subsequent to the Plaintiff's transfer, the Trustee rented the Hangar to the Plaintiff, and each month the Plaintiff hand-delivered a check to the Trustee. During his tenancy, the Plaintiff alleges that the Trustee did not obtain insurance or liability protection on the property.

The Plaintiff states that on or about February 26, 2006,[6] the Plaintiff was cleaning the second story of the Hangar. While organizing some items, the Plaintiff claims he stepped in the missing 4' x 8' section of the second floor, which he had earlier pointed out to

---

2. *See* Docket Entry No. 1.

3. *See* Docket Entry No. 12.

4. *See* Docket Entry Nos. 73, 86.

5. *See* Docket Entry No. 85.

6. The Plaintiff indicates in his Complaint that he was injured on "February 27, 2006, the day before [the Hangar] was sold." The record indicates the Hangar was sold on February 27, 2006, so Plaintiff's injury must have occurred no later than February 26, 2006

the Trustee's appraiser, causing the Plaintiff to lose his footing and fall approximately ten feet to the concrete floor below. The impact with the floor caused the Plaintiff to break his arm and sustain contusions on his back, legs, head, and hand. Consequently the Plaintiff was hospitalized and required three surgeries.

### B. Allegations Concerning the Sale of Assets

On February 27, 2006, the Trustee, through counsel, requested the Court's approval of two separate sale motions. One motion was a motion to sell the Plaintiff's interest in the residence located at 15815 E. Melrose Street, Gilbert, Arizona 85296 (the "Residence"), the second motion was to sell the Plaintiff's interest in the Hangar. Mr. E. Vernon Eder ("Mr. Eder"), the Plaintiff's father-in-law, had provided the Trustee with initial offers for the Residence and the Hangar. The Trustee utilized the offers as a predicate for the sale motions that were subsequently filed. Because of Mr. Eder's relation to the Plaintiff, the Trustee needed to disclose same in the sale motions and provide creditors and interested parties, after notice, with the ability to present a higher or better offer to the Court. Such sale hearings also offer the public the opportunity to bid at any hearing. At the February 27, 2006 hearing, the Plaintiff was represented by counsel who was present in the courtroom, and the Plaintiff noted his telephonic appearance from his hospital room. Also present in the courtroom were counsel for Mr. Eder and a person interested in purchasing the Hangar.

The Trustee's counsel presented the Court with Mr. Eder's initial offer to purchase the Residence. Mr. Eder, prior to the hearing on the sales motion, had agreed to purchase the Residence "as is where is, free and clear of all liens and encumbrances," for $366,000, with the liens and encumbrances to attach to the proceeds. At the time of the offer, the Residence was encumbered by three liens totaling $346,000, including (i) a consensual first lien in the amount of $148,000, (ii) a consensual second lien of $48,000, and (iii) the Plaintiff's homestead exemption in the amount of $150,000. The difference between the purchase price and the amount of the liens; that is, the sum of $20,000, was to be paid to the estate. Before the sale was approved by the Court at the hearing, Plaintiff's counsel modified the terms and conditions of the sale, stating that "since this offer is coming in from the

[Plaintiff's] father-in-law, the [Plaintiff] himself is dedicating his homestead to this acquisition."[7] The Plaintiff's counsel explained that the terms of the sale had been amended so that the consideration to be paid would be $366,000 unless Mr. Eder was the successful bidder. If Mr. Eder were the only bidder for the Residence, the Plaintiff had decided to not demand payment of his homestead exemption from the proceeds. Mr Eder, through counsel, indicated his acceptance of the above-stated terms by acknowledging the change in the offer to the Court. The Trustee also agreed to the amendment to the offer. The effect was to reduce the purchase price to be paid by Mr. Eder for the Residence by the amount of $150,000. The consensual liens would attach to the proceeds and be paid in full, the estate would still receive the sum of $20,000, and the Plaintiff would determine, outside of the bankruptcy proceedings, how Mr. Eder would give effect to the Plaintiff's homestead exemption, if at all. The benefit to Mr. Eder was to reduce the amount of consideration to be paid by him for the Residence. Since the change in the terms of the sale only involved whether the Plaintiff could demand that his homestead exemption be paid from the proceeds of the sale, and the Plaintiff had decided to allow the transfer without said payment, the Court proceeded with the sale without further noticing. In any event, there were no other bidders for the Residence present in the Courtroom, and the Court approved the sale, as amended on the record, to Mr. Eder.[8] The Plaintiff now alleges, in his Complaint, irrespective, of the record before the Court that he should now receive the sum of $150,000, constituting his homestead exemption, from the Trustee.

At the February 27, 2006 hearing, the Trustee's counsel also requested that the Court approve the sale of the Hangar to Mr. Eder or the highest and best offer. The record from the hearing reflects that after counsel for the Trustee described Mr. Eder's opening offer of $76,000, an individual named Mr. John Nieman, acting pro se, requested that he be able to participate in the auction. After Mr. Eder's counsel began the bidding at $76,000, Mr. Nieman

---

7. *See* Docket No. 26.

8. *See* Docket No. 547; Case No. 02-18352-PHX-SSC.

bid the sum of $76,500. The bidding process continued at minimal intervals of $500 until the Hangar was eventually sold to Mr. Eder for $93,500. Mr. Nieman agreed to serve as a back-up purchaser, with a bid of $92,500, if Mr. Eder did not close the transaction in a timely manner.[9]

The Plaintiff does not dispute that the auction occurred, but alleges in his Complaint that the Trustee, with the help of Cunningham and Associates, located a bidder whose only purpose in appearing at the auction was to bid up the price of the Hangar. The Plaintiff bases this allegation on the fact that the Trustee had previously obtained approval from the Court to hire Cunningham and Associates, as a professional, to assist in locating purchasers for other items of property in the Plaintiff's estate. At the February 27, 2006 hearing, the record reflects that prior to the auction sale of the Hangar, the Trustee's counsel requested that this Court approve that compensation be paid to Cunningham and Associates "if a buyer that Cunningham and Associates brought today wants to make an offer and that offer . . . .benefits the estate [by] more than $76,000."[10] The Court denied the request, on the record, since the Trustee had not requested prior Court approval to hire Cunningham and Associates to assist in the sale of the Hangar prior to the hearing. It is unclear to the Court whether Cunningham and Associates was able to identify a potential buyer or whether Mr. Nieman was there at the request of Cunningham and Associates.

### III. LEGAL DISCUSSION

The Trustee moves to dismiss this Complaint pursuant to Fed.R.Civ.P. 12(b)(6), which is made applicable to these Adversary Proceedings by Bankruptcy Rule 7012(b)(6). In considering a motion to dismiss under Rule 12(b)(6), all allegations of material fact in the complaint must be taken as true and must be construed in the light most favorable to the non-moving party. <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996).

---

9. *See* Docket No. 26, p. 13-17.

10. *See* Docket No. 26 p. 11.

While a Rule 12(b)(6) motion to dismiss does not require "detailed factual allegations," the plaintiff must provide "more than labels and conclusions and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, --- U.S ---, 127 S.Ct. 1955, 1964-65 (2007). Dismissal of the complaint is appropriate if it appears beyond doubt that the claimant can prove no set of facts in support of the claim that would entitled him to relief. ARC Ecology v. U.S. Dept. Of Air Forces, 411 F.3d 1092, 1096 (9th Cir. 2005).

### A. Counts 1 and 2 Shall Be Dismissed.

Counts 1 and 2 of the Complaint seek damages for the injury the Plaintiff sustained on February 26, 2006 while at the Hangar that was under the alleged "custodial control" of the Trustee. The Plaintiff claims in Count 1 that he incurred $55,000 in medical bills as a result of his fall from the second story of the Hangar, in addition to suffering a permanent loss of function when his arm is placed in certain positions and a measured loss of strength in his left arm. Additionally, the Plaintiff claims, in Count 2, that during his recuperation period, he was unable "to return to work" as a pilot for over a year. According to the Plaintiff, this inability to work for a one-year period not only caused US Airways to withdraw an offer of re-employment to the Plaintiff, but also caused him to lose more than nineteen years of airline seniority.

The Trustee argues in its Motion to Dismiss that Plaintiff's claim is time-barred. In determining whether a claim is time-barred, the Court must consider, first, when the claim arose and then apply the applicable statute of limitations period. Under the Bankruptcy Code, the determination of when a claim arises is based on federal law, while the substantive rights are guided by state law. In re Cool Fuel, Inc., 210 F.3d 999, 1006 (9th Cir. 2000); In re Cossu, 410 F.3d 591, 595 (9th Cir. 2005), aff'd after appeal on remand sub nom. Cossu v. Jefferson Pilot Sec. Corp., 2007 WL 2729846 (E.D. Cal., September 19, 2007).

Within the context of an action or proceeding under the Bankruptcy Code, the Ninth Circuit has stated that the trial court, in determining when a claim arises, must look at the time when the claim was "fairly contemplated" by the plaintiff. Cool Fuel, 210 F.3d at

1006-07. Based on the Plaintiff's Complaint, he sustained his injuries on February 26, 2006, which is the date when the Plaintiff's claim was "fairly contemplated."

Next, the Court must consider applicable state law to determine what is the applicable statute of limitations period to govern the substantive rights of the parties. The Plaintiff, in Counts 1 and 2 of his Complaint, has asserted a claim for personal injury as a result of his having been injured at the Hangar, and a separate claim for damages resulting therefrom. In considering the Plaintiff's personal injury claim, A.R.S. § 12-542(1) provides a two-year limitation period within which to file an action after such injury has accrued.[11] In this matter, the Plaintiff's claim arose on February 26, 2006. However, the current adversary was not filed by the Plaintiff until February 28, 2008, more than two years after the Plaintiff's action arose.[12] As a result, the Plaintiff has exceeded the statutory time available to bring a personal injury claim, and the Court must grant the Trustee's Motion to Dismiss Counts 1 and 2.[13]

### B. Counts 3 Will Remain Pending.

The Plaintiff alleges in Count 3 that the Trustee entered into an agreement

---

11. ARIZ. REV. STAT. § 12-542(1) (2008) provides, in pertinent part, as follows:

Except as provided in § 12-551 there shall be commenced and prosecuted within two years after the cause of action accrues, and not afterward, the following actions:

1. For injuries done to the person of another including causes of action for medical malpractice as defined in § 12-561.

12. The Plaintiff argues that since he filed this Complaint pro se, he should be entitled to some type of extension of time. His only explanation for the delay was that he was unable to use the Court's electronic system to file the Complaint, since only attorneys currently have access to the system. This argument is insufficient as a matter of law. In re Glass, 60 F.3d 565 (9th Cir. 1995). The Plaintiff had two years from the fall at the Hangar to prepare and file his Complaint. He simply chose not to act in a prompt manner.

13. Since Count 2 is simply a claim for damages, it fails if the underlying claim for substantive rights is time-barred. In re Cool Fuel, Inc., 210 F.3d 999 (9th Cir. 2000); In re Cossu, 410 F.3d 591 (9th Cir. 2005), *aff'd after appeal on remand sub nom.* Cossu v. Jefferson Pilot Sec. Corp., 2007 WL 2729846 (E.D. Cal. 2007); Manterola v. Farmers Ins. Exchange, 200 Ariz. 572, 30 P.3d 639 (App. 2001).

1    with Mr. Nieman whereby Mr. Nieman was instructed to engage in fraudulent conduct by

2    artificially inflating the price of the Hangar at the auction. The Plaintiff believes that as a

3    result of this relationship, Mr. Eder paid more than the fair market value for the Hangar, which

4    violated the Trustee's fiduciary duty owed to the bankruptcy estate and constituted an act of

5    fraud against the Court. In response to these allegations, the Trustee claims that the Plaintiff

6    lacks standing to bring the claim, and that even if the Plaintiff is found to have standing, the

7    actions taken were within the scope of the Trustee's duties, and as such, are protected by

8    judicial immunity.

9    According to the Plaintiff, the Trustee invited Mr. Nieman to the auction

10    sale of the Hangar for the sole purpose of bidding up the price. Recent sales data provided by

11    the Plaintiff indicates that the fair market value of the Hangar was somewhere in the range of

12    $75,000 to $84,000. Due to Mr. Nieman's bidding at the Court auction sale, the price of the

13    Hangar rose from an opening bid of $76,000 to the final sale amount of $93,500.

14    As a preliminary matter, the Court must determine whether the Plaintiff has

15    standing. Generally, a party or nonparty that has no interest in a case does not have standing.

16    However, the Plaintiff's argument is that the Trustee was involved in a fraud against the

17    Court, and as such, the general rules that guide standing are not dispositive of the issue. When

18    a claim of fraud against the court arises, the courts allow "a nonparty [to] seek relief from a

19    judgment procured by fraud if the nonparty's interests are directly affected." Eyak Native

20    Village v. Exxon Corp., 25 F.3d 773, 777 (9th Cir. 1994) *cert. denied*, 513 U.S. 1102, 115

21    S.Ct. 778, 130 L.Ed.2d 673 (1995).

22    At the hearing on the Motion to Dismiss, the Court inquired of the Plaintiff

23    as to what interest he had in the Hangar which would support standing. The Plaintiff stated

24    that the increase in the sales price for the Hangar caused Mr. Eder, as landlord, to increase the

25    rent that the Plaintiff, as tenant, needed to pay under a new lease of the Hangar. This

26    allegation is also contained in the Plaintiff's Complaint. Although it is unclear whether such a

27    cause and effect relationship does exist between the increase in the sales price of the Hangar

28    and the amount that the Plaintiff must pay Mr. Eder in rent, the Court must assume said facts

to be true for the purposes of the Motion to Dismiss. Based upon the foregoing, the Plaintiff has set forth a basis, albeit subject to exploration through discovery, that his interest was directly affected such that he currently has standing to pursue a claim of fraud before the Court. The Court cautions the Plaintiff, however, that these are just the preliminary stages of litigation, and the Court may conclude subsequently that the Plaintiff does not have the requisite standing to proceed. However, the Court is currently persuaded that the Plaintiff has met the preliminary test as to standing.

The Court must next determine whether the Plaintiff has the ability to sue the Trustee. A bankruptcy trustee is an officer of the court, and as an officer of the court, is "entitled to a form of derivative judicial immunity from liability for actions carried out within the scope of the trustee's official duties." Kashani v. Fulton (In re Kashani), 190 B.R. 875, 883 (B.A.P. 9th Cir. 1995). This quasi-immunity only applies if the trustee is "acting within the scope of authority conferred upon the trustee by the appropriate statute(s) or the court" leaving open the possibility to sue a trustee who "commits intentional or negligent actions which amount to violations of the duties imposed upon the trustee by law." Id. The courts have created certain "standards and instructions" which allow compliant trustees to gain judicial immunity. Id. at 884. These standards and instructions require the trustee to: obtain court approval prior to taking actions and provide the debtor notices of these actions; provide the court candid disclosure of the action that the trustee will take; and only take actions that fall within the trustee's official duties. Id.

The procedure the Trustee followed in selling the Hangar appears, on its face, to have met the standards set forth by the courts. However, the Plaintiff claims that there was an agreement between the Trustee and Mr. Nieman to fix the bidding at an auction before the Court. If this alleged agreement did exist, it was not disclosed to the Court, which may impact whether the Trustee should be afforded immunity by the Court.

Given the potential of fraud against the Court, the Plaintiff has stated enough facts in the Complaint to survive the Trustee's Motion to Dismiss. However, the Court must warn the Plaintiff that actions against a trustee require a higher standard of pleading as well as

- 10 -

1  additional procedural requirements than traditional actions.  Thus, the Plaintiff must provide the
2  Court enough information so that the Court may make an informed decision on the matter.
3  <u>Kashani</u>, 190 B.R. at 885.  At this point, the Plaintiff has not met this higher standard of pleading,
4  but the Court is willing to allow the Plaintiff the opportunity to perform additional discovery to
5  determine whether there are sufficient facts to support the Plaintiff's claim.  If there are additional
6  facts to support said claim, the Plaintiff will be required to amend his pleading to meet the
7  stringent requirements of <u>Kashani.</u>

### C.  Count 4 Should Be Dismissed.

Count 4 of the Complaint sets forth a claim for monetary damages which have resulted from certain additional costs added to the purchase price of the Hangar.  The Plaintiff argues that these additional closing costs have resulted in an increase in the rent that he must pay.  According to the Plaintiff, on the date of the Hangar sale, the Trustee failed to disclose that the purchaser would be liable for the closing costs, any outstanding insurance, all homeowner fees, and all other expenses not paid prior to the sale.  The Plaintiff claims that the Trustee's failure to pay these costs caused the purchase price of the Hangar to increase by $3,100 which resulted in the Plaintiff's paying an additional $230 in rent per month.

The Court must first determine whether the Plaintiff has standing to bring this action against the Trustee.  This test as to standing is separate from the test utilized previously by the Court concerning a fraud on the Court.  In order generally to establish standing, a plaintiff must meet three requirements.  First, the plaintiff must make a showing of "injury in fact" - the harm must be both "concrete" and "actual or imminent, not conjectural or hypothetical."  <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (internal quotation marks and citations omitted).  Second, the plaintiff must show "a causal connection between the injury and the conduct complained of - the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'"  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); <u>Simon v. Eastern Ky. Welfare Rights Orgnaization</u>, 426 U.S. 26, 41-42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976).  Third, there

- 11 -
Case 2:08-ap-00143-SSC    Doc 31   Filed 09/24/08   Entered 09/24/08 10:30:40   Desc
                         Main Document    Page 11 of 14

must be a likelihood, and not just mere speculation, that the injury will be "redressed by a favorable decision." Simon at 38, 43, 96 S.Ct., at 1924, 1926.

The Plaintiff has failed to trace the damage claimed to the Trustee. According to the record, Mr. Eder was represented by counsel at the auction for the Hangar. At any point before, during, or immediately after the auction, Mr. Eder or his counsel could have requested the Court to clarify the terms and conditions of the sale, such as whether there were any additional costs associated with a close of escrow. However, noticeably missing from the record is any mention of concern by either Mr. Eder or his counsel. In reviewing the record, it appears that Mr. Eder, through his counsel, entered fourteen bids after his initial bid was overbid by Mr. Nieman. Additionally, seven of these bids made by Mr. Eder were for an amount greater than the fair market estimate of $84,000 provided to the court by the Plaintiff. The Court also notes that while Mr. Nieman was bidding up the price at $500 increments, counsel for Mr. Eder was bidding up the price at $1,000 increments.

Mr. Eder had no obligation to make any bid at the auction, and he certainly had every right to ask questions about potential closing costs or what remained unpaid as to the Hangar. Bankruptcy sales such as this one are conducted "as is, where is," so anyone bidding at a bankruptcy sale assumes a certain amount of risk. Mr. Eder could have withdrawn his bid or stopped bidding, if he felt that he had insufficient information about the costs associated with the purchase of the Hangar.

The Court sees no connection between Mr. Eder's assumption of certain costs of sale and any injury to the Plaintiff. There is no injury in fact, because Mr. Eder entered the auction process with the understanding that he was purchasing the Hangar "as is, where is" and that there were certain costs associated with the close of escrow. Since Mr. Eder may not allege an injury, the Court sees no basis for the Plaintiff to have suffered any injury. Moreover, the Court sees no causal connection between the Plaintiff's increase in rent and the costs associated with the sale of the Hangar. If the costs associated with the sale affected the Plaintiff's rent unnecessarily, the Plaintiff could have rented a hangar at another location. Finally, because of how bankruptcy sales are conducted, with the buyer taking a

certain amount of risk at any such sale, the Court sees no basis to change the closing costs that had to be paid by Mr. Eder. If the Court is unable to vitiate that part of the sale, there is no basis for the Plaintiff to meet the third prong of standing; that is, that the Court will be able to redress the injury by a favorable decision. Based on the facts presented in the claim, the Plaintiff is paying additional rent because Mr. Eder, independent of the Trustee, is choosing to charge additional rent, and the Plaintiff is choosing to pay this higher rent. For the reasons stated above, the Court is granting the Trustee's Motion to Dismiss Count 4.

### D. Count 5 Should Be Dismissed.

Count 5 of the Complaint seeks damages in the amount of $150,000 as a result of the Trustee's failure to pay the Plaintiff his homestead exemption upon the sale of the Plaintiff's residence. Under Arizona law, a debtor is provided a statutory homestead exemption of no more than $150,000. A.R.S. § 33-1101(A).[14]

According to the agreement entered into by the parties on the record, the sale of the Residence was free and clear of all liens and encumbrances, inclusive of the Plaintiff's homestead exemption. The record from the Court proceedings on the day of the sale indicate that Mr. Eder was going to pay off the consensual liens and that the Plaintiff was "dedicating his homestead to [the] acquisition." Regardless of the fact that the Plaintiff was in

---

14. ARIZ. REV. STAT. § 33-1101(A) (2008) provides, in pertinent part, as follows:

Any person the age of eighteen or over, married or single, who resides within the state may hold as a homestead exempt from attachment, execution and forced sale, not exceeding one hundred fifty thousand dollars in value, any one of the following:

> 1. The person's interest in real property in one compact body upon which exists a dwelling house in which the person resides.
> 2. The person's interest in one condominium or cooperative in which the person resides.
> 3. A mobile home in which the person resides.
> 4. A mobile home in which the person resides plus the land upon which that mobile home is located.

Case 2:08-ap-00143-SSC   Doc 31   Filed 09/24/08   Entered 09/24/08 10:30:40   Desc
Main Document    Page 13 of 14

the hospital at the time of the auction, the Plaintiff was on the telephone and his counsel was present in the courtroom. The Plaintiff and his counsel agreed that the Residence should be sold to Mr. Eder, with Mr. Eder paying only the consensual liens on the Property. It was left to Mr. Eder and the Plaintiff to determine how and when the Plaintiff should receive his homestead exemption. In return, Mr. Eder received the benefit of not having to pay the sum of $150,000, for the homestead exemption, at the time of the close of escrow.[15] The Trustee is not in possession of any funds representing the homestead exemption that need to be turned over to the Plaintiff. Under Arizona law, the Plaintiff does have the ability to waive or abandon his homestead concerning a sale of his property. McFarland v. Pruitt, 69 Ariz. 133, 210 P.2d 963 (1949). In this case, the Plaintiff chose to so act. The Plaintiff has failed to state a claim for which any set of facts could provide the Plaintiff relief. As a result, the Court is granting the Trustee's Motion to Dismiss Count 5.

## IV. CONCLUSION

Based upon the foregoing, the Court is granting the Trustee's Motion to Dismiss as to Counts 1, 2, 4, and 5. The Court is further dismissing the Trustee's Motion to Dismiss as to Count 3. The Court will execute a separate Order incorporating this Decision.

DATED this 24th day of September, 2008

_____
Honorable Sarah Sharer Curley
United States Bankruptcy Judge

BNC to notice.

---

15. By reducing the consideration that needed to be paid by Mr. Eder for the Residence, presumably the financing was less than expected. This would have allowed Mr. Eder to provide the Plaintiff with lower monthly payments for any rent or financing that Mr. Eder, as the Plaintiff's father-in-law, provided to the Plaintiff and his family.